**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,
    Plaintiff,

                                Case No. 8:26-cr-139-KKM-AEP

v.

MICHAEL PHILLIP BRACKNELL,
    Defendant.

_____/

**DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE, STATEMENTS, AND DERIVATIVE EVIDENCE, AND REQUEST FOR AN EVIDENTIARY HEARING**

Michael Phillip Bracknell moves under the Fourth Amendment and Federal Rule of Criminal Procedure 12(b)(3)(C) to suppress the methamphetamine, sildenafil tablets, currency, cellular telephones, statements, and all derivative evidence obtained from the May 15, 2025 detention and warrantless search of his person. He also requests an evidentiary hearing.

Suppression is required for three independent reasons. First, Mr. Bracknell did not commit the stop-sign violations asserted by the officers, and the conflicting, uncorroborated accounts do not establish an objective basis for the seizure. Second, even assuming *arguendo* a lawful traffic stop, the officers did not diligently pursue a traffic mission; they used the stop to facilitate K-9 Woody's narcotics sniff without reasonable suspicion that Mr. Bracknell had committed, was committing, or was about to commit another

offense. Third, the officers lacked specific, individualized facts suggesting that Mr. Bracknell was armed and dangerous. The ensuing search also exceeded the narrow scope of a *Terry* frisk: Officer Emile Limoges admitted that nothing in Mr. Bracknell's pockets felt like a weapon, yet he entered the pockets, removed a pill container, and continued into a full evidentiary search.

The depositions and recordings present concrete factual disputes about the alleged traffic violations, the officers' use of time, the purported knife statement, and the scope of the search. The Court should require the Government to establish each step of the seizure and search through testimony and the synchronized video, dispatch, citation, canine, and property records.

## I. MATERIAL FACTS

1.  Detectives Steven Chimeri and Morgan Upchurch were working with a proactive street-crimes unit on May 15, 2025. Upchurch explained that the unit routinely drove around, conducted traffic stops, and then "went from there." The officers knew Mr. Bracknell before this encounter, and Upchurch could not recall whether the unit had discussed targeting him that day. Deposition of Morgan Upchurch 5:9-6:15 (Sept. 29, 2025).

2.  Mr. Bracknell was operating an electric scooter in Zephyrhills. He denies failing to stop at any stop sign and asserts that he stopped as required at

the traffic-control devices along his route. No recording produced in discovery depicts an alleged stop-sign violation.

3. The officers' accounts do not identify the same number and locations of violations. Chimeri testified that he saw two violations, at the Shell gas-station exit near Gall Boulevard and County Road 54 and at the stop sign near Napa Auto Parts on Main Street. He attributed a separate Wawa violation to Upchurch. Deposition of Steven Chimeri 9:22-10:15 (Sept. 29, 2025). Upchurch testified that he saw three violations and described locations near the Wawa and the Quality Inn/Ameri Wash area, while relaying that Chimeri reported another violation near the Kangaroo gas station. Upchurch Dep. 6:17-8:1.

4. The officers did not stop Mr. Bracknell when they allegedly observed the first violation. They communicated with each other, followed him, and waited until he turned onto Sylvan Lane, a dead-end road where they believed he would have fewer opportunities to leave. Upchurch Dep. 7:14-8:11; Chimeri Dep. 8:8-11:14.

5. The stop began at approximately 3:42 p.m. Chimeri advised Mr. Bracknell of the asserted violations. Mr. Bracknell asked whether he would receive a ticket, and Chimeri responded that he had not decided. Neither Chimeri nor Upchurch began preparing a citation or written

warning. Chimeri Dep. 10:16-22; Upchurch Dep. 8:12-9:2. No citation or written warning is reflected in the produced records.

6.  Chimeri already knew Mr. Bracknell's identity. He opened his laptop, accessed Mr. Bracknell's record, and requested a wants-and-warrants check by radio. The recordings permit a finding that, rather than diligently completing a traffic task, the officers then waited and coordinated the canine investigation. Chimeri Dep. 10:16-11:14; Chimeri BWC at approximately 15:43-15:47.

7.  Limoges deployed Woody around the scooter several minutes later. The sniff lasted a few moments, but the officers devoted additional time to positioning, coordinating, discussing the alleged alert, and converting the traffic encounter into a narcotics detention. Limoges then directed Chimeri to administer Miranda warnings before any search of the scooter. Deposition of Emile Limoges 10:1-14:9 (Sept. 29, 2025); *Body-Worn Camera Recording of Detective Steven Chimeri*, at approximately 15:43:00–15:47:00 (May 15, 2025).

8.  Before the sniff, the officers identified no suspected offense apart from the disputed traffic infractions. Chimeri testified that Mr. Bracknell was not a threat, was not forcefully combative, and gave him no reason to believe he was armed. He was eating, speaking on a telephone with the

officers' permission, and standing near several officers. Chimeri Dep. 12:4-21.

9. Upchurch saw no weapon or suspicious bulge and no criminal activity beyond the alleged traffic violations. When asked why he treated Mr. Bracknell as possibly armed, Upchurch testified that he treats everyone as armed because "this is Florida" and "most everybody has a weapon." Upchurch Dep. 9:3-10:9.

10. Limoges likewise testified that Mr. Bracknell was not a threat to him, was not threatening another officer, had committed no criminal activity that Limoges observed, and gave him no reason to believe he was armed before the canine alert. Limoges Dep. 12:17-13:6.

11. After Woody allegedly alerted to the center of the scooter, the officers detained Mr. Bracknell for a narcotics investigation. Chimeri testified that the officers "always" pat down a person after a canine alert before searching the vehicle. Limoges similarly testified that, based on a generalized association between drugs and weapons, he tries to check everyone who will be standing near officers. Chimeri Dep. 16:15-17:2; Limoges Dep. 16:24-17:16.

12. Limoges claims that, as he approached, Mr. Bracknell said a knife was in his left pocket. Mr. Bracknell denies making that statement. Chimeri and Upchurch did not hear it. Limoges acknowledged that the statement

should appear on multiple body-worn-camera recordings, but the produced recordings do not capture it. No knife or other weapon was recovered. Chimeri Dep. 14:22-15:7; Upchurch Dep. 13:15-14:10; Limoges Dep. 14:4-15:2.

13. Limoges entered Mr. Bracknell's left cargo pocket and removed a small plastic pill container. Upchurch heard Mr. Bracknell identify the contents as Viagra[1] only after the container had been removed. Limoges admitted that he did not feel anything in Mr. Bracknell's pockets that amounted to a weapon. Upchurch Dep. 11:4-13:3; Limoges Dep. 15:4-16:18.

14. The search did not end when the pocket yielded no knife. Limoges checked the remaining pockets and continued along Mr. Bracknell's body. When he encountered a non-anatomical bulge near the pelvic and upper-leg area, Mr. Bracknell reacted. The officers handcuffed him, loosened his belt, and removed a sock containing the methamphetamine charged in Count One. Limoges Dep. 19:17-20:16; *Body-Worn Camera Recording of Detective Morgan Upchurch*, at approximately 15:48:20–15:49:34 (May 15, 2025).

---

[1] Viagra is the brand name under which sildenafil citrate is marketed for the treatment of erectile dysfunction. U.S. Nat'l Libr. of Med., *DailyMed: Viagra—Sildenafil Citrate Tablet, Film Coated.*

## II. THE MOTION PRESENTS MATERIAL FACTUAL DISPUTES REQUIRING AN EVIDENTIARY HEARING

A defendant is entitled to an evidentiary hearing when a suppression motion alleges facts that are sufficiently definite, specific, detailed, and nonconjectural to establish a substantial Fourth Amendment claim. *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985); *see also United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000). Once the defense establishes that a search was conducted without a warrant, the Government bears the burden of proving that the intrusion fell within a recognized exception to the warrant requirement. *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983).

This motion identifies the officers, the locations they claim to have observed, the minute-by-minute sequence shown on the recordings, the traffic tasks that were and were not performed, and the precise point at which a protective frisk became a search for evidence. It also identifies a direct credibility dispute over the alleged knife statement. Those disputes should be resolved through testimony and synchronized review of the body-worn-camera, dash-camera, dispatch, canine, warning, and property records.

## III. THE STOP WAS UNLAWFUL AT ITS INCEPTION BECAUSE MR. BRACKNELL COMMITTED NO TRAFFIC INFRACTION

A traffic stop is a seizure and must be supported at its inception by objective facts giving an officer at least reasonable suspicion that a traffic violation occurred. *Whren v. United States*, 517 U.S. 806, 809-10 (1996);

*Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014). Florida law requires a driver approaching a stop sign to stop at the marked stop line, before entering the crosswalk, or at the nearest point from which the driver can view approaching traffic. Fla. Stat. § 316.123(2)(a).

Mr. Bracknell denies running or rolling through any stop sign. He stopped as required. The Government therefore must prove what each officer actually saw: the precise sign, the officer's vantage point, the location of the stop line or crosswalk, the scooter's movement, and the point at which the officer concluded that a violation had occurred.

The existing record does not reliably establish those facts. The officers did not record the alleged violations, did not stop Mr. Bracknell immediately, did not begin a citation, and did not issue a citation or documented warning. Their sworn descriptions differ as to the number and locations of the signs. Chimeri identified the Shell exit and Napa Auto Parts; Upchurch described three violations and used different landmarks. These are not collateral discrepancies. They concern the only asserted basis for the initial seizure.

The officers' prior knowledge of Mr. Bracknell and their decision to wait until he entered a dead-end road do not themselves establish a traffic violation. A prior reputation for flight cannot substitute for reasonable suspicion that an infraction occurred on this occasion. Although an officer's subjective motive does not invalidate an objectively justified stop, *Whren*, 517

U.S. at 813, the planned containment and lack of contemporaneous traffic enforcement make objective proof of the alleged violations especially important. If the Government cannot establish a lawful basis at inception, all evidence obtained afterward must be suppressed.

**IV. EVEN IF THE STOP BEGAN LAWFULLY, THE OFFICERS UNLAWFULLY PROLONGED IT TO FACILITATE WOODY'S SNIFF**

A traffic stop may last only as long as reasonably necessary to address the traffic violation and perform ordinary safety-related tasks tied to that mission. A dog sniff is not part of the traffic mission. Without independent reasonable suspicion of another offense, officers may not add time to conduct or facilitate a sniff. *Rodriguez v. United States*, 575 U.S. 348, 354-57 (2015); *Illinois v. Caballes*, 543 U.S. 405, 407-08 (2005). The critical question is not whether the sniff occurred before a ticket could theoretically have been written, but whether the officers' handling of the canine investigation added time to a diligently pursued traffic stop. *Rodriguez*, 575 U.S. at 357. The Eleventh Circuit applies that rule to any unrelated investigative activity that adds time without independent reasonable suspicion. *United States v. Campbell*, 26 F.4th 860, 884-85 (11th Cir. 2022) (en banc).

The recordings and depositions permit a finding that the traffic mission was suspended almost immediately. The officers knew Mr. Bracknell's identity before the stop. Neither stopping detective began a citation or warning. Chimeri accessed the known record and requested a warrant check,

but the officers then waited, positioned themselves, conducted Woody's sniff, discussed the purported alert, and arranged Miranda warnings and a personal search. The sniff began approximately three minutes after the seizure, and the officers did not return to any traffic task afterward.

The Government cannot avoid Rodriguez merely by pointing to a pending radio check while other officers pursue an unrelated narcotics investigation. The issue is whether the officers diligently performed the traffic tasks they actually intended to complete, or instead extended those tasks to create time for the dog. *Campbell*, 26 F.4th at 884-85. Here, Chimeri told Mr. Bracknell that he had not decided whether to issue a ticket, performed no citation work, and shifted directly from the warrant check to the canine investigation.

Nor did independent reasonable suspicion justify the added detention. Before the alert, Chimeri and Upchurch identified no offense other than the alleged stop-sign violations. Limoges had observed no criminal activity. Mr. Bracknell was eating, using his telephone with permission, and standing with multiple officers. He made no threatening movement, displayed no weapon, and attempted no flight. Familiarity with Mr. Bracknell, a prior history, irritation about the stop, or a generalized desire to investigate narcotics does not amount to particularized reasonable suspicion that he had just committed, was committing, or was about to commit another crime. The

evidence obtained after the prolonged detention must therefore be suppressed.

## V. THE PAT-DOWN WAS UNSUPPORTED BY REASONABLE SUSPICION AND BECAME AN UNLAWFUL EVIDENTIARY SEARCH

### A. The officers lacked individualized reasonable suspicion that Mr. Bracknell was armed and dangerous.

A lawful traffic stop does not automatically authorize a frisk. An officer may pat down a person only when specific, articulable facts support a reasonable belief that the particular person is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 21, 27, 30 (1968); *Arizona v. Johnson*, 555 U.S. 323, 326-27, 332 (2009). The inquiry is individualized. A categorical practice or generalized association cannot replace facts showing that this person posed a danger. *See Ybarra v. Illinois*, 444 U.S. 85, 91, 93-94 (1979).

The officers' own testimony defeats the required showing. Chimeri said Mr. Bracknell was not a threat, was not forcefully combative, and gave him no reason to believe he was armed. Upchurch saw no weapon or suspicious bulge and relied on his practice of treating nearly everyone in Florida as armed. Limoges initially saw no threat, crime, or reason to believe Mr. Bracknell was armed. The officers instead described a blanket policy: when a dog alerts, they pat down the person so officers can turn their attention to the vehicle. Terry requires more.

The purported canine alert did not supply the missing armed-and-dangerous suspicion. Even a reliable alert to the scooter would establish, at

11

most, probable cause directed to the scooter under the totality of the circumstances. It would not automatically authorize a search of Mr. Bracknell's body, much less establish that he was armed and dangerous. Probable cause and reasonable suspicion must be particularized to the place or person searched. *Ybarra*, 444 U.S. at 91; *United States v. Di Re*, 332 U.S. 581, 586-87 (1948).

The Government may rely on Limoges's claim that Mr. Bracknell announced a knife. That claim is disputed and must be tested at a hearing. Mr. Bracknell denies making it; Chimeri and Upchurch did not hear it; the synchronized recordings do not capture it; no knife was recovered; and Limoges acknowledged that the statement should be audible on the recordings. The Court should determine whether the statement occurred, when it allegedly occurred, and whether it preceded Limoges's entry into the pocket.

## B. Limoges had no lawful "plain feel" basis to remove the pills or enter Mr. Bracknell's pockets.

A Terry frisk is a narrowly limited search of outer clothing for weapons, not a search for evidence. *Terry*, 392 U.S. at 29-30. An officer may enter a pocket when the pat-down provides a reasonable basis to believe the object may be a weapon. *See United States v. Clay*, 483 F.3d 739, 743-44 (11th Cir. 2007). An officer may seize nonweapon contraband under the plain-feel doctrine only when its incriminating character is immediately apparent from

the lawful touch, without further manipulation or exploratory searching. *Minnesota v. Dickerson*, 508 U.S. 366, 373, 375-79 (1993).

Limoges admitted that he felt nothing in Mr. Bracknell's pockets that amounted to a weapon. That admission forecloses a protective justification for entering the cargo pocket. The item removed was a small plastic pill container. Pills in a container do not feel like a knife, firearm, or other weapon. Nor could the container's incriminating character have been immediately apparent by touch. The officers learned what it contained only after Limoges removed it, Mr. Bracknell identified it as Viagra, and Upchurch visually inspected the pills. The removal therefore cannot be justified as either a protective seizure or a plain-feel seizure of immediately apparent contraband.

The sequence also matters. Upchurch's testimony and recording show that Limoges placed his hand inside the pocket, removed the container, and only then elicited the statement that it contained Viagra. The Government cannot use a statement produced by the unlawful pocket entry to retroactively justify the entry. *See Sibron v. New York*, 392 U.S. 40, 63-65 (1968).

## C. The continued pocket-by-pocket and groin search exceeded any conceivable protective purpose.

Even accepting the alleged knife statement for argument's sake, it specified the left pocket. Once Limoges entered that pocket and found no

13

knife, the asserted justification ended. Limoges nevertheless checked the other pockets and continued along Mr. Bracknell's body. Upchurch described what followed as a "full search." The charged methamphetamine was recovered only after Limoges encountered a nonweapon bulge near the pelvic area, officers handcuffed Mr. Bracknell, loosened his belt, and removed the concealed sock.

The purpose of a *Terry* frisk is to neutralize weapons, not to investigate whether a person is carrying drugs. *Dickerson*, 508 U.S. at 373. Because the frisk lacked individualized armed-and-dangerous suspicion, because the pill container did not feel like a weapon or immediately apparent contraband, and because the search continued after the alleged weapon was not found, the pills, methamphetamine, and all evidence obtained from Mr. Bracknell's person must be suppressed.

## VI. ALL PHYSICAL EVIDENCE, STATEMENTS, AND DERIVATIVE PHONE EVIDENCE ARE FRUITS OF THE VIOLATIONS

The methamphetamine, sildenafil tablets, currency, and cellular telephones were obtained through the challenged detention and search. Mr. Bracknell's statements, including the statement identifying the pills, were elicited during or after those intrusions. Miranda warnings do not by themselves attenuate the taint of an unlawful seizure or search. *Brown v. Illinois*, 422 U.S. 590, 601-04 (1975).

14

If the initial stop lacked reasonable suspicion, the officers prolonged the stop without independent reasonable suspicion, the frisk lacked individualized suspicion that Mr. Bracknell was armed and dangerous, or the search exceeded *Terry's* scope, the Court should suppress the physical evidence, statements, cellular telephones, and evidence obtained from later warrants relying on those fruits. *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963).

## CONCLUSION

Mr. Bracknell respectfully requests that the Court conduct an evidentiary hearing and, after the hearing, suppress the methamphetamine, sildenafil tablets, currency, cellular telephones, statements, and all derivative evidence obtained from the May 15, 2025 seizure and search, together with any other relief the Court deems appropriate.

Respectfully submitted,
**CHARLES L. PRITCHARD, JR.**
**FEDERAL PUBLIC DEFENDER**

/s/ Ryan J. Maguire
Ryan J. Maguire
Assistant Federal Defender
Florida Bar No. 117534
400 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: ryan_maguire@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 4, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record including:

Michael Sinacore, AUSA

<u>/s/ Ryan J. Maguire</u>
Ryan J. Maguire
Assistant Federal Defender

16